# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| ETERNAL INVESTMENTS, L.L.C., | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 05-0521-CV-W-FJG ) |
| THE CITY OF LEE'S SUMMIT, MISSOURI, | ) ) ) ) |
| Defendant. | ) |

# ORDER

Currently pending before the Court is plaintiff's Motion for Reconsideration of the Court's March 8, 2006 Order Dismissing Plaintiff's Substantive Due Process Claims (Doc. # 89), plaintiff's Motion for Summary Judgment on Count I (Doc. # 92); defendant's Motion for Summary Judgment to Limit Plaintiff's Damages (Doc. # 94), defendant's Motion for Summary Judgment on Plaintiff's Procedural Due Process Claim (Doc. # 99) and defendant's Motion for Summary Judgment on plaintiff's Equal Protection and State Law Declaratory Judgment Claims (Doc. # 101).

## I. BACKGROUND

Plaintiff, Eternal Investments, LLC applied to the City of Lee's Summit, Missouri to rezone approximately thirty acres from agricultural (AG) to single family residential (R-1), to allow for a proposed eighty-seven single family subdivision to be known as Brookfield. Lee's Summit professional planning staff prepared a memorandum dated February 23, 2005, which was addressed to Steve Lewis, City Administrator. The Staff Memorandum stated:

The comprehensive plan, as explained later in this letter and in more
detail, would allow either the residential subdivision as is being requested
or as a rural density type development.  As has been seen over the years,
agricultural land in the area has been developing into standard lot
subdivisions. Although this does not mandate the future of the remaining
large parcels, it does give us a history of past activity.  It would be just as
easy for staff to recommend approval of a one acre lot subdivision as to
support another standard single family subdivision in the area. The market
usually dictates the necessity of one type of development over another.
This has not been an easy recommendation to make since staff can
support either type of residential use. Since the area has been reverting
from large acreages to smaller lot subdivisions, staff is recommending
approval for this request.

On September 19, 2004, Shelly Temple-Kneuvean, former City Administrator for Lee's Summit sent an email to Robert McKay, the Lee's Summit Planning and Development Director.  Ms. Kneuvean states in her email that she is contacting him regarding Eternal's proposed subdivision.  She states that she and another property owner will be filing protest petitions. She expresses concern regarding the type of development that is being proposed by Eternal.  She concludes her email by stating: "we would be supportive of some subdivision - perhaps 2 or 3 houses per 10 acres.  I believe that would be more compatible development - and I am hopeful that the City believes there is a place for this type of development rather than allowing developers to develop every inch of every piece of ground in our town."

Mr. McKay responded to Ms. Kneuvean on October 6, 2004 and stated:

Staff looks at surrounding densities along with the comp plan in making
recommendations.  In this case your home is the only dwelling on 10
acres in the area as all others are vacant parcels. If all other parcels were
developed similar to yours then the RDR, Rural Density Residential (1
acre lots) zoning might be applicable, however, since that is not the case
and the majority of parcels are either vacant or developed with R-1 single
family densities the R-1 is an appropriate use of the remaining parcels.  I
know this is not what you would like to see around your home but it is an

appropriate use of the parcel in question. That said, the RDR is available if the PC and or CC feel that an RDR type of development is appropriate in this area of town. I will request that the staff letter identify the alternatives to an R-1 only density and that way the decision makers will be offered a choice. This is the best option I can give. We have not designated any areas in the city as large lot land use but that would not prevent RDR from becoming reality.

Hope this helps a little. If I can provide more info please let me know.

The density being requested, 3.17 DU/AC is appropriate for R-1 single family residential development where up to 4.0 DU/AC is allowed. This is a basic single family dwelling development seeking R-1 zoning. There is nothing out of the ordinary with this application provided that all infrastructure improvements can be met. The comp plan shows this as a low density residential which it will remain.

On March 3, 2005, the City Council held a public hearing on Eternal's application. The City Council voted 4-3 to deny Eternal's application. The subject property was annexed into the City in 1964. At the time of annexation, the property was agricultural in the county. When it was annexed, the City placed the agricultural designation on the property. This AG designation is a "holding" zone until the appropriate infrastructure is available and the properties are developed and rezoned. All of the infrastructure necessary to support development was available to the subject property at the time the City Council denied Eternal's application.

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary

3

judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  If the moving party meets this requirement, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. 242, 248 (1986).  In Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), the Court emphasized that the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts" in order to establish a genuine issue of fact sufficient to warrant trial.  In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence.  Matsushia, 475 U.S. 574, 588; Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985).

### III. DISCUSSION

**A. Motion for Reconsideration**

On March 8, 2006, the Court granted the City's Motion to Dismiss plaintiff's substantive due process claims.  The Court found that plaintiff had alleged conduct that was improper, but did not qualify as truly irrational conduct.  Plaintiff has now filed a Motion to Reconsider in light of the decision in Furlong Companies, Inc. v. City of Kansas City, Missouri, No. SC 86741, 2006 WL 696494 (Mo. banc. Mar. 21, 2006).  In that case, the plaintiff owned 2.76 acres of real property that he intended to subdivide and develop for commercial use.  The plaintiff's plan was to first construct a car wash and once the land was finally platted and subdivided, to sell or lease the other two tracts of land for the construction of two fast food restaurants.  The City staff recommended

4

that the City Planning Commission approve the preliminary plat application. However, the Commission denied plaintiff's plat application. The plaintiff then requested that the preliminary plat application be submitted to the city council. The Planning, Zoning and Economic Development committee held public hearings and the City also requested a traffic study. The study concluded that plaintiff's plat would have little impact on the existing traffic system. The City then requested more time and information regarding the study. Plaintiff provided the Planning and Zoning committee with a revised study. The chairman of the Planning and Zoning committee ultimately called plaintiff's plat ordinance out of committee for docketing before the entire City Council. The chairman stated that legal counsel had advised there was no valid basis for rejecting the plaintiff's application. However, the City voted not to approve plaintiff's application. Plaintiff filed suit against the City and the trial court entered an order of mandamus compelling the City to approve the plaintiff's plat application immediately and without undue delay. The Court found that the City's action in denying the application was unreasonable, unlawful, arbitrary and capricious. The trial court also heard evidence on plaintiff's claim for damages under Section 1983. The trial court found "the City's conduct to be more than a mere violation of the law and that the action of the City rose to the level of truly irrational." On appeal, the Missouri Supreme Court stated:

> Zoning and plat approval represent different types of authority in political subdivisions. "Zoning" is the exercise of legislative authority as to what land uses are in the interest of the public for particular areas within the political subdivision. The governmental body has great latitude in this regard. "Plat approval" is the ministerial application of zoning requirements, uniformly, to all particular parcels within the zoned area. Far less latitude exists in this regard, as each landowner is entitled to equal application of the zoning and planning laws applicable to his property. See generally, Yokely, E.C., Law of Subdivisions 217-318 (2d

5

ed. 1981).

Furlong, 2006 WL at *3.

Plaintiff argued that the City had violated his rights under Section 1983 in denying his preliminary plat in contravention of its ministerial duty to approve it upon compliance with the subdivision regulations. Id. at * 10. The Missouri Supreme Court found that in the ten years leading up to and including the plaintiff's plat application, 197 plat applications were submitted to the City for approval. Of those 197, 196 were typically approved within one week of submission. Only plaintiff's application was denied during a ten year time period. The Court stated that "[a]ll plat denial cases do not give rise to an action for violation of section 1983. . . . Mere delay or mistaken application of the law is not alone sufficient to meet the 'truly irrational' standard. In dicta, the Eighth Circuit has even suggested that bad faith enforcement of an invalid law would not be sufficient to state a claim." Id. at * 12. However, the Missouri Supreme Court found that the facts of that case went beyond

> mistaken, arbitrary, or capricious application of the law. . . . Further, there was evidence from which the trial court could find that, despite the recommendations of staff and legal counsel, and ultimately the arguments of a fellow city council member, the city council intentionally delayed and denied Furlong its property rights in disregard of the law. When government acts with intentional disregard of its own valid law, knowing that its actions deprive individuals of their property rights, such action is 'truly irrational.'

Id. at *12.

In the instant case, the Court finds that the facts of this case are distinguishable from the facts of the instant case. As the Missouri Supreme Court noted, approval of plat applications is a substantially different process. An application to rezone property

requires that the City Council exercise its legislative authority. The Missouri Supreme Court noted that a city has "great latitude" in this regard. However, plat approval is the ministerial application of zoning requirements to all parcels within the zoned area. Far less latitude exists in this regard. Thus, although the Missouri Supreme Court found that the City violated the plaintiff's substantive due process rights in this regard, the Court does not believe that the evidence presented in the current cases qualifies as "truly irrational." Accordingly, the plaintiff's Motion for Reconsideration is hereby **DENIED** (Doc. # 89).

**B. Eternal's Motion for Summary Judgment on Count I - Declaratory Judgment**

Plaintiff states in this motion that it is only seeking declarations that the underlying AG zoning of the subject property was unreasonable and that since Eternal's application for rezoning from AG to R-1 was consistent with the pattern of development in the area, existing land uses in the area, and the Comprehensive Plan, Eternal's application should have been granted.

In Heidrich v. City of Lee's Summit, 916 S.W.2d 242 (Mo.App. 1995), the Court set out the standard of review:

> [T]he exercise of zoning power is a legislative rather than a quasi-judicial function. . . . Upon review, this Court may reverse a legislative action only if arbitrary and unreasonable, meaning that the decision is not fairly debatable, . . . A decision is considered arbitrary and unreasonable if it bears no substantial relationship to the public health, safety, morals, or general welfare. . . . If the public welfare is not served by the zoning or if the public interest served by the zoning is greatly outweighed by the detriment to private interests, the zoning is arbitrary and unreasonable . . . In making this determination the Court considers:
> the adaptability of the subject property to its zoned use and the effect of zoning on property value in assessing private detriment. The character of the neighborhood, the zoning and uses of nearby property, and the

7

> detrimental effect that a change in zoning would have on other property in
> the area are relevant to the determination of public benefit.

Id. at 248-49 (internal citations and quotations omitted). In Fairview Enterprises, Inc. v. City of Kansas City, 62 S.W.3d 71 (Mo. App. 2001), the Court noted:

> a two-step analysis must be conducted when determining the validity of a
> zoning provision. . . . First, the court determines whether the challenging
> party has presented sufficient evidence to rebut the presumption that the
> present zoning is reasonable. Then, if the presumption has been rebutted,
> the court determines whether the government's evidence establishes that
> the reasonableness of the zoning is fairly debatable.

Id. at 77 (internal citations and quotations omitted).

In the instant case, Eternal argues that the City has previously rezoned all of the property adjacent to the entire west line of the subject property as R-1. Immediately east of the east line of the subject property is land that the City previously zoned R-1. Additionally, 330 feet to the south of the property, are three more tracts that the City had previously zoned R-1. Eternal states that all of the properties in Lee's Summit in the area of the subject property that have sought a rezoning from AG to R-1 in the last ten years have been rezoned to R-1. Eternal states that the property was designated as Agricultural in 1964 when the City annexed the property and this classification was only intended to be an interim classification until infrastructure became available which would allow for development.

Eternal also argues that the AG classification works an unreasonable hardship on it, as the property is worth less than it would be if it were rezoned. Eternal also states that the property is not adaptable to AG zoning because the character of the neighborhood has drastically changed since the original AG zoning was put in place in 1964. Eternal also notes that it has been treated differently than other applicants.

8

Eternal argues that TG, Nine Oaks and Cottonwood Estates tracts were all designated in the low density residential category by the Comprehensive Plan, were zoned AG, have Todd George Road on their Eastern boundary and have Todd George Parkway shown as touching or going through them. All of these other properties were rezoned to R-1, except Eternal. Finally, Eternal argues that the City's motives were improper because the City's refusal to rezone the property was based upon a desire to appease neighboring property owners who had personal connections to the City.

The City argues in opposition that the property is adaptable to its current use and in fact two-thirds of the property is being used for agricultural purposes. The City also notes that the property immediately to the north is presently being used as a Christmas Tree farm and the tract of land immediately to the south is zoned AG and is being used for a single residence. The City also argues that with regard to the difference in value, Eternal has offered no facts which would quantify the difference in value between the AG zoning classification and the R-1 classification. Finally, the City states that "there is no question but that the neighborhood has a rural character" and "the plaintiff's proposed use of the property would radically change the character of the neighborhood. The density of the proposed development, roughly three residences per acre, far outstrips the very-low- density residences currently in the neighborhood, to say nothing of the agricultural purposes."

In response, Eternal states that the property is not currently being used for agricultural purposes. Mr. Hesse who currently owns 2/3 of the tract which Eternal is seeking to have rezoned, cut the grass on the property and has given it to his son to feed to his livestock. However, Eternal argues that he did this only because the City

9

received a complaint and sent him a letter threatening to mow his twenty acres and put a tax lien on it for the costs. Eternal also argues that in a suburban community such as Lee's Summit, agriculture is not a primary economic use and property of 20 acres or less is not generally used for the raising of crops or livestock.

The Court finds that Eternal has met its burden and has rebutted the presumption of reasonableness. Additionally, the Court also finds that Eternal has shown that the continuance of the current AG zoning classification is not a fairly debatable issue and it bears no substantial relationship to the public health, safety morals or general welfare of the community. Accordingly, the Court hereby **GRANTS** Eternal's Motion for Summary Judgment on Count I (Doc. # 92).

**C. City's Motion for Summary Judgment on Procedural Due Process**

The City has moved for Summary Judgment on plaintiff's procedural due process claim. Eternal argued that the City violated its procedural due process rights when it accepted a protest petition signed by the trustees of a trust that owned a neighboring property without the designation that they signed as trustees. The City argues that in the zoning context, assuming a landowner has a protectible property interest, procedural due process is afforded when the landowner has notice of the proposed government action and an opportunity to be heard. The City argues that this requirement was met in this case, as Eternal had an opportunity to present its evidence before the City Council.

Eternal argues that it did not have an opportunity to be heard on the merits of its zoning application and that the City violated its rights by considering the invalid legal

10

protest petition at the wrong hearing. Eternal argues that the protest petition shouldn't have been considered until the City Council meeting when the ordinance came before the Council for a first reading.

In Anderson v. Douglas County, 4 F.3d 574, 578 (8th Cir. 1993), cert. denied, 510 U.S. 1113 (1994), the Court stated, "In the zoning context, assuming a landowner has a protectible property interest, procedural due process is afforded when the landowner has notice of the proposed government action and an opportunity to be heard." In this case, there is no dispute that Eternal had notice and an opportunity to be heard. Although the protest petition may have been presented at the wrong hearing, and may not have been correctly signed, the Court does not find that this presents a violation of Eternal's procedural due process rights. Accordingly, the Court hereby **GRANTS** the City's Motion for Summary Judgment on Count III - Plaintiff's Procedural Due Process Claim (Doc. # 99).

**D. City's Motion for Summary Judgment on Equal Protection Claim**

Having determined that the plaintiff is entitled to summary judgment on Count I, the Court need not reach the issue of whether the City also violated its equal protection rights. Accordingly, the Court hereby **DENIES** the City's Motion for Summary Judgment on plaintiff's equal protection and state law declaratory judgment claims (Doc. # 101).

**E. City Motion for Partial Summary Judgment to Limit Damages**

As the Court has determined that Eternal is entitled to judgment under Count I, the Court recognizes that there is an issue of damages which remains to be determined. The Court will schedule at a later time a conference with the parties to discuss whether

11

this issue can be resolved by the Court or whether this is an issue which must be resolved by a jury.  Accordingly, the Court hereby **REMOVES** this case from the Fall 2006 Accelerated Docket.  The Court will issue an order advising the parties of the date to discuss the issue of damages.


Date: October 10, 2006  
Kansas City, Missouri

**S/ FERNANDO J. GAITAN, JR.**
Fernando J. Gaitan, Jr.
United States District Judge