# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| ETERNAL INVESTMENTS, L.L.C., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 05-0521-CV-W-FJG |
| | ) |
| THE CITY OF LEE'S SUMMIT, MISSOURI, | ) |
| | ) |
| Defendant. | ) |

# ORDER

Currently pending before the Court is plaintiff's Motion for Summary Judgment on Count II of its Petition - Equal Protection. (Doc. # 187).

## I. BACKGROUND

Plaintiff, Eternal Investments, LLC applied to the City of Lee's Summit, Missouri to rezone approximately thirty acres from agricultural (AG) to single family residential (R-1), to allow for a proposed eighty-seven single family subdivision to be known as Brookfield. Lee's Summit professional planning staff prepared a memorandum dated February 23, 2005, which was addressed to Steve Lewis, City Administrator. The Staff Memorandum stated:

> The comprehensive plan, as explained later in this letter and in more detail, would allow either the residential subdivision as is being requested or as a rural density type development. As has been seen over the years, agricultural land in the area has been developing into standard lot subdivisions. Although this does not mandate the future of the remaining large parcels, it does give us a history of past activity. It would be just as easy for staff to recommend approval of a one acre lot subdivision as to support another standard single family subdivision in the area. The market usually dictates the necessity of one type of development over another. This has not been an easy recommendation to make since staff can

support either type of residential use. Since the area has been reverting from large acreages to smaller lot subdivisions, staff is recommending approval for this request.

On September 19, 2004, Shelly Temple-Kneuvean, former City Administrator for Lee's Summit sent an email to Robert McKay, the Lee's Summit Planning and Development Director. Ms. Kneuvean states in her email that she is contacting him regarding Eternal's proposed subdivision. She states that she and another property owner will be filing protest petitions. She expresses concern regarding the type of development that is being proposed by Eternal. She concludes her email by stating: "we would be supportive of some subdivision - perhaps 2 or 3 houses per 10 acres. I believe that would be more compatible development - and I am hopeful that the City believes there is a place for this type of development rather than allowing developers to develop every inch of every piece of ground in our town."

Mr. McKay responded to Ms. Kneuvean on October 6, 2004 and stated:

Staff looks at surrounding densities along with the comp plan in making recommendations. In this case your home is the only dwelling on 10 acres in the area as all others are vacant parcels. If all other parcels were developed similar to yours then the RDR, Rural Density Residential (1 acre lots) zoning might be applicable, however, since that is not the case and the majority of parcels are either vacant or developed with R-1 single family densities the R-1 is an appropriate use of the remaining parcels. I know this is not what you would like to see around your home but it is an appropriate use of the parcel in question. That said, the RDR is available if the PC and or CC feel that an RDR type of development is appropriate in this area of town. I will request that the staff letter identify the alternatives to an R-1 only density and that way the decision makers will be offered a choice. This is the best option I can give. We have not designated any areas in the city as large lot land use but that would not prevent RDR from becoming reality.

Hope this helps a little. If I can provide more info please let me know.

> The density being requested, 3.17 DU/AC is appropriate for R-1 single
> family residential development where up to 4.0 DU/AC is allowed. This is
> a basic single family dwelling development seeking R-1 zoning. There is
> nothing out of the ordinary with this application provided that all
> infrastructure improvements can be met. The comp plan shows this as a
> low density residential which it will remain.

On March 3, 2005, the City Council held a public hearing on Eternal's application. The City Council voted 4-3 to deny Eternal's application. The subject property was annexed into the City in 1964. At the time of annexation, the property was agricultural in the county. When it was annexed, the City placed the agricultural designation on the property. This AG designation is a "holding" zone until the appropriate infrastructure is available and the properties are developed and rezoned. All of the infrastructure necessary to support development was available to the subject property at the time the City Council denied Eternal's application.

## II. PROCEDURAL HISTORY

Plaintiff, initially filed its four count petition in the Circuit Court of Jackson County, Missouri on April 29, 2005. On June 6, 2005, defendant removed the case to this Court pursuant to 28 U.S.C. § 1331. In the Notice of Removal, defendant noted that in Count II of the Petition, the Plaintiff attempted to set forth a claim under the Equal Protection Clause of the 14th Amendment to the Constitution of the United States of America. (*See* Petition at pp. 34 through 36.) Additionally, in Count III plaintiff sought damages under 42 U.S.C. § 1983 and issues related to procedural due process. On March 8, 2006, the Court dismissed plaintiff's substantive due process claim. On October 10, 2006, the Court granted plaintiff Eternal's Motion for Summary Judgment on Count I (Declaratory Judgment), granted the City's Motion for Summary Judgment on Count III - (Procedural

3

Due Process Claim) and denied plaintiff's Motion for Reconsideration of the dismissal of the substantive due process claim. In the October 10, 2006 Order, the Court stated, "[h]aving determined that the plaintiff is entitled to summary judgment on Count I, the Court need not reach the issue of whether the City also violated its equal protection rights." Eternal states that the Court could sua sponte enter judgment on Count II in Eternal's favor. Alternatively, Eternal also offered to submit a dispositive motion on Count II. The City believed the claim was moot because of the Court's previous ruling on the Declaratory Judgment count. The City stated that if the Court was inclined to consider this Count, it was entitled to either dismissal or the entry of summary judgment on this Count. The City also requested an opportunity to rebrief this issue. The Court determined that additional briefing on this issue would be beneficial. The parties have now completed their briefing on plaintiff's Equal Protection claim and the Court hereby rules as follows.

### III. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the moving party meets this requirement, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. 242, 248 (1986). In Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S.

4

574, 586 (1986), the Court emphasized that the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts" in order to establish a genuine issue of fact sufficient to warrant trial. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushia, 475 U.S. 574, 588; Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985).

### IV. DISCUSSION

**A. Law Regarding Equal Protection**

In Village of Willowbrook v. Olech, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000), the Supreme Court considered the question of whether the Equal Protection Clause gives rise to a cause of action on behalf of a "class of one." The Court stated:

> Our cases have recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.

Id. at 564. The Court stated that it was affirming the decision of the Court of Appeals, but was not reaching the alternative theory of "subjective ill will" relied on by the Court of Appeals. Id. at 565. In a concurring opinion, Justice Breyer expressed concern that the Equal Protection Clause could be interpreted in a manner that would "transform many ordinary violations of city or state law into violations of the Constitution." Justice Breyer noted that in the Seventh Circuit's opinion, the Court "found that in this case respondent had alleged an extra factor as well - a factor that the Court of Appeals called 'vindictive

5

action,' 'illegitimate animus,' or 'ill will.'" Id. at 565 - 566.  Justice Breyer stated that "the presence of that added factor in this case is sufficient to minimize any concern about transforming run-of-the-mill zoning cases into cases of constitutional right." Id. at 566. See also Barstad v. Murray County, 420 F.3d 880, 884 (8th Cir. 2005).

**B. Did the City Intentionally Treat Eternal's Application Differently?**

Eternal states that for the last ten years, every other applicant who sought rezoning from AG to R-1, got their property rezoned as requested, except Eternal. Eternal analyzes this issue several different ways - comparing Eternal to all other persons in the city limits, the north area of Lee's Summit, all properties along existing Todd George Road or all the properties south of Scruggs Road that sought rezoning from AG to R-1 that were affected by the right of way for the new Todd George Parkway.  Eternal states that regardless of what pool of applicants Eternal is compared to, the result is always the same - everyone else's applications were approved and Eternal's application was rejected.

The City argues in opposition that developments identified by Eternal are different from the plaintiff's proposed development and thus they are not proper comparators.  The City argues that some of the developments were much larger, involving over 100 residences, such as Bordner Estates, Foxwood and Sunnybrook. Some involved small pockets of development of ten acres or less, such as Nine Oaks, Woodview Estates, Cottonwood Estates, the Mist, Foster's Addition and J.L. Robinson. Additionally, the City argues that all of the proposed comparators, except for Nine Oaks, obtained their R-1 zoning before November 2001, the date when RDR zoning became a zoning option.  The City argues that the facts show significant differences between the

6

plaintiff's proposed development and the developments to which it proposes to be compared.

In reply, Eternal states that in looking at Eternal's tracts of land (E, F and G), and comparing them to the other tracts of land which were created from the same farmland, all of the tracts were subject to the same private deed restrictions, all are relatively the same size (8-10 acres), all have access to and from new Todd George Parkway and are impacted by new Todd George Parkway, all have the same 12 inch water line along the west side of Todd George Road, all are located in the southwest quadrant of Scruggs and Todd George, all have low-density residential as their recommended land use, all property adjacent to the west line is zoned R-1, all were annexed at the same time (1964), had the same entity which owed the tracts and all sought the same benefit from the City (rezoning from AG to R-1). However, Eternal states that while Tracts I, J and K, which were part of same original piece of farmland as Eternal's tracts (E, F & G), obtained approval of its rezoning from AG to R-1, Eternal's application for its tracts of land were denied.

The Court agrees and finds that Eternal has met its burden to show that there were properties which possesses similar characteristics to Eternal's tracts of land and while the applications for rezoning of these properties were approved, Eternal's application was denied.

**C. Rational Basis**

In its previous Order granting plaintiff's Motion for Summary Judgment on Count I, the Court determined, "Eternal has shown that the continuance of the current AG zoning classification is not a fairly debatable issue and it bears no substantial

7

relationship to the public health, safety, morals or general welfare of the community." (Doc. # 175). The City did not address this issue in its Suggestions in Opposition to the present motion for summary judgment. Therefore, the Court finds that there was no rational basis for the City's decision.

### D. Illegitimate Animus, Ill Will or Vindictive Action

The City argues that Eternal is required to establish this additional factor. The City argues that there is no evidence of any animus or ill will directed against Eternal. The City argues that the council members who voted against the application did so for non-discriminatory reasons.

It is not entirely clear even whether this additional factor is required. In <u>Jicarilla Apache Nation v. Rio Arriba County</u>, 440 F.3d 1202, 1210 (10th Cir. 2006), the Court stated, "[t]he majority [of the Supreme Court], however, did not require subjective ill will and instead left it to the circuit courts to give content to the phrase 'irrational and wholly arbitrary.'" The Court in <u>Jicarilla</u> noted that it had struggled with the question as had several other courts. The most recent Eighth Circuit case to address an Equal Protection claim did not address this issue. However, even if Eternal were required to prove this factor, the Court finds this factor present in the instant case.

On September 19, 2004, Shelly Temple-Kneuvean, former City Administrator for Lee's Summit sent an email to Robert McKay, the Lee's Summit Planning and Development Director. Ms. Kneuvean was a friend of Mr. McKay's and her office at the City was in the same building as Mr. McKay's. Ms. Kneuvean states in her email that she is contacting him regarding Eternal's proposed subdivision. She states that she and another property owner will be filing protest petitions. She expresses concern

8

regarding the type of development that is being proposed by Eternal. She concludes her email by stating: "we would be supportive of some subdivision - perhaps 2 or 3 houses per 10 acres. I believe that would be more compatible development - and I am hopeful that the City believes there is a place for this type of development rather than allowing developers to develop every inch of every piece of ground in our town."

Mr. McKay responded to Ms. Kneuvean on October 6, 2004 and stated:

Staff looks at surrounding densities along with the comp plan in making recommendations. In this case your home is the only dwelling on 10 acres in the area as all others are vacant parcels. If all other parcels were developed similar to yours then the RDR, Rural Density Residential (1 acre lots) zoning might be applicable, however, since that is not the case and the majority of parcels are either vacant or developed with R-1 single family densities the R-1 is an appropriate use of the remaining parcels. I know this is not what you would like to see around your home but it is an appropriate use of the parcel in question. That said, the RDR is available if the PC and or CC feel that an RDR type of development is appropriate in this area of town. I will request that the staff letter identify the alternatives to an R-1 only density and that way the decision makers will be offered a choice. This is the best option I can give. We have not designated any areas in the city as large lot land use but that would not prevent RDR from becoming reality.

Hope this helps a little. If I can provide more info please let me know.

The density being requested, 3.17 DU/AC is appropriate for R-1 single family residential development where up to 4.0 DU/AC is allowed. This is a basic single family dwelling development seeking R-1 zoning. There is nothing out of the ordinary with this application provided that all infrastructure improvements can be met. The comp plan shows this as a low density residential which it will remain.

Hector Soto was the planner who wrote the staff letter for Eternal's zoning application. He did not write the paragraph in the staff letter dealing with the RDR zoning alternative but later was informed that Bob McKay had inserted this paragraph in the staff letter after he drafted it.

9

Additionally, two days before the vote on Eternal's application, one councilman, James Freeman, sent an email to Ms. Kneuvean in which he stated:

> I know Bob Hedberg was trying to speak with elected officials - he was in Jim Hallam's office yesterday. I suggest you call all the elected officials. Let me know if you get any wavering, so I know who to target directly. Thanks.

The Court finds that these facts are sufficient to show that the City acted with an ill will or a vindictive motive in denying Eternal's application for rezoning. A former employee of the City, who lived close to the property subject to the rezoning request used her contacts and influence with City officials and the City Council in order to ensure that Eternal's application was rejected, despite a recommendation from the City's professional planning staff that the application be approved. The Court finds that these facts are sufficient to separate this case from the run-of-the-mill zoning cases and therefore the Court **GRANTS** Eternal's Motion for Summary Judgment on its Equal Protection Claim (Doc. # 187).

### E. Damages

On November 27, 2006, the Court noted that the issue of damages would benefit from additional factual development. The Court requested that the parties confer regarding whether depositions of experts witnesses were necessary and if so the parties were to submit to the Court a schedule to designate and depose those experts. Now, that the Court has disposed of the Equal Protection claim, the Court hereby requests that the parties provide an update on or before **March 12, 2007** regarding the issue of damages.

10

## V. CONCLUSION

For the reasons stated above, the Court hereby **GRANTS** Eternal's Motion for Summary Judgment on Count II (Doc. # 187).


Date: 3/1/07
Kansas City, Missouri

**S/ FERNANDO J. GAITAN, JR.**
Fernando J. Gaitan, Jr.
Chief United States District Judge

11